## *In re* HEATH, Petitioner.

### ORIGINAL.

No Number. Argued February 1, 1892. — Decided March 21, 1892.

This court has no appellate jurisdiction over judgments of the Supreme Court of the District of Columbia in criminal cases.

THOMAS H. HEATH was convicted of manslaughter at a special criminal term of the Supreme Court of the District of Columbia, and sentenced to be confined in the penitentiary at Albany, New York. Upon appeal to the general term of that court the judgment was affirmed, whereupon he applied for a writ of error from this court.

The petition was originally presented to the Chief Justice; and, by order duly made, referred to the court in session for the consideration and determination of the question of jurisdiction arising thereon.

*Mr. John Lyon* for the petitioner.

*Mr. Assistant Attorney General Maury* opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

By section five of the Judiciary Act of March 3, 1891, (26 Stat. 826, c. 517,) it was provided that appeals and writs of error might be taken "from the District Courts or from the existing Circuit Courts" directly to this court "in cases of conviction of a capital or otherwise infamous crime." And although this case is not embraced in terms within the appellate jurisdiction conferred by the provision, yet it is contended that it falls within it, when taken in connection with section 846 of the Revised Statutes of the District of Columbia. That section is as follows: "Any final judgment, order or decree of the Supreme Court of the District may be reëxamined and reversed or affirmed in the Supreme Court of the United States upon writ of error or appeal, in the same cases and in like manner as provided by law in reference to the final judgments, orders and decrees of the Circuit Court of the United States."

The argument is, that the phrase "as provided by law" should be construed as if it read "as is, or has been, or may be provided by law." But when we consider the general rule that the affirmative description of the cases in which the jurisdiction may be exercised implies a negative on the exercise of such power in other cases, it will be seen that to give to this local legislation extending the appellate jurisdiction of this court to the District of Columbia, the construction contended for, so as to make it include all subsequent legislation touching our jurisdiction over Circuit Courts of the United States, is quite inadmissible.

Prior acts may be incorporated in a subsequent one in terms or by relation, and when this is done, the repeal of the former leaves the latter in force, unless also repealed expressly or by necessary implication. And the adoption in a local law of the

provisions of a general law does not carry with it the adoption of changes afterwards made in the general law.   This was so ruled in *Kendall* v. *United States*, 12 Pet. 524, 625.   One of the questions there was whether the then Circuit Court of this District had power to issue the writ of mandamus to a public officer.   That court was established by the act of Congress of February 27, 1801, (2 Stat. 103, c. 15,) which provided by section 3 : "That there shall be a court in said District, which shall be called the Circuit Court of the District of Columbia ; and the said court and the judges thereof shall have all the powers by law vested in the Circuit Courts and the judges of the Circuit Courts of the United States."   At the time this law went into effect, the powers of the Circuit Courts of the United States were prescribed by the act of February 13, 1801, (2 Stat. 89, c. 4,) which act was repealed by the act of March 8, 1802, (2 Stat. 132, c. 8).   This court held that the Circuit Court of the District possessed the powers vested under the act of February 13, 1801, notwithstanding its repeal, and Mr. Justice Thompson, delivering the opinion of the court, said :

"It was not an uncommon course of legislation in the States, at an early day, to adopt, by reference, British statutes ; and this has been the course of legislation by Congress in many instances where state practice and state process have been adopted.   And such adoption has always been considered as referring to the law existing at the time of adoption ; and no subsequent legislation has ever been supposed to affect it.   And such must necessarily be the effect and operation of such adoption.   No other rule would furnish any certainty as to what was the law, and would be adopting prospectively all changes that might be made in the law.   And this has been the light in which this court has viewed such legislation.   In the case of *Cathcart* v. *Robinson*, 5 Pet. 280, the court, in speaking of the adoption of certain English statutes, say, by adopting them, they become our own as entirely as if they had been enacted by the legislature.   We are then to construe this third section of the act of 27th of February, 1801, as if the eleventh section of the act of 13th of February, 1801, had been incorporated at full length ; and by this section it is de-

cláred that the Circuit Courts shall have cognizance of all cases in law or equity, arising under the Constitution and laws of the United States, and treaties made, or which shall be made under their authority; which are the very words of the Constitution, and which is, of course, a delegation of the whole judicial power, in cases arising under the Constitution and laws, etc.; which meets and supplies the precise want of delegation of power which prevented the exercise of jurisdiction in the cases of *McIntire* v. *Wood,* 7 Cranch, 504, and *McClung* v. *Silliman,* 6 Wheat. 598; and must, on the principles which governed the decision of the court in those cases, be sufficient to vest the power in the Circuit Court of this District."

We do not consider the weight of this decision, as authority, weakened by anything that fell from the court in *Wales* v. *Whitney,* 114 U. S. 564. That was an appeal from the judgment of the Supreme Court of the District denying an application for a writ of *habeas corpus.* Upon the judgment being announced, an original application was made to this court for the writ, but, as stated by Mr. Justice Miller in the opinion, " on a suggestion from the court that an act of Congress, at its session just closed, had restored the appellate jurisdiction of this court in *habeas corpus* cases over decisions of the Circuit Courts, and that this necessarily included jurisdiction over similar judgments of the Supreme Court of the District of Columbia, counsel, on due consideration, withdrew their application," and brought up the record on appeal; and it was added that section 846 of the Revised Statutes of the District " justifies the exercise of our appellate jurisdiction in the present case."

The act of March 3, 1885, " amending section seven hundred and sixty-four of the Revised Statutes," (23 Stat. 437; Supp. R. S. 485, 2d ed.,) was referred to in the margin of *Wales* v. *Whitney.* The Revised Statutes of the United States and the Revised Statutes of the District were approved June 22, 1874, and section 764 of the former provided for an appeal to the Supreme Court " in the cases described in the last clause of the preceding section." The words "in the last clause" operated as a limitation and by the amendatory act were stricken out. By the acts

of August 29, 1842, (c. 257, 5 Stat. 539,) and of February 5, 1867, (c. 28, 14 Stat. 385,) an appeal from the judgments of the Circuit Courts in *habeas corpus* cases was allowed to this court, and by section 11 of the act of March 3, 1863, (c. 91, 12 Stat. 764), the same provision was made in relation to the judgments, orders or decrees of the Supreme Court of the District, as is now contained in section 846 of the District Revised Statutes. And as section 764 of the Revised Statutes and said section 846 were contemporaneously enacted, it was assumed that striking out the restrictive words from section 764 should be allowed like effect upon section 846. The question of jurisdiction was not argued, and no reference was made to the act of March 3, 1885, regulating appeals from the Supreme Court of the District, (23 Stat. 443,) and providing that no appeal or writ of error should be allowed from its judgments or decrees unless the matter in dispute exclusive of costs should exceed the sum of five thousand dollars, except in cases involving the validity of any patent or copyright, or in which the validity of a treaty or statute of, or an authority exercised under, the United States, was drawn in question.

The act of March 3, 1891, was passed to facilitate the prompt disposition of cases in this court and to relieve it from the oppressive burden of general litigation by the creation of the Circuit Courts of Appeals and the distribution of the appellate jurisdiction. By sections five and six, cases of conviction of a capital or otherwise infamous crime are to be taken directly to this court, and all other cases arising under the criminal laws to the Circuit Courts of Appeals. Sections thirteen and fifteen refer to appeals and writs of error from the decisions of the United States Court in the Indian Territory and the judgments, orders and decrees of the Supreme Courts of the Territories. No mention is made of the Supreme Court of the District of Columbia, and we perceive no ground for holding that the judgments of that court in criminal cases were intended to be embraced by its provisions.

The conclusion is that we have no jurisdiction to grant the writ applied for, and the petition is, therefore,

*Denied.*