¶ 1. This is an appeal from a conviction of grand larceny in the Circuit Court of Newton County, Mississippi, Honorable Marcus D. Gordon presiding. The defendant, James A. Stradford, Jr., was found guilty by a jury of his peers and was sentenced to five years in the custody of the Mississippi Department of Corrections.
¶ 2. Following a denial of his post-trial motions, Stradford filed this appeal citing two critical errors on the part of the lower court. First, Stradford claims that because the indictment fails to correctly identify the victim of the crime of larceny, it was "fatally defective." Secondly, Stradford cites error on the part of the trial court in failing to suppress eyewitness testimony identifying Stradford as one of the perpetrators of the crime in a photographic lineup and in failing to suppress the subsequent in-court identification of Stradford by those same witnesses.
 FACTS
¶ 3. On the morning of October 30, 1998, Tim Seese, a delivery man for Grady Sims d/b/a Sims Distributing Company, a distributor of Tom's snack foods, parked the company delivery van in front of Laird's Hospital in Union, Mississippi. Seese left the doors of the van open as he was inside of the hospital making an inventory of the snack machines and refilling them. Sherry Whinery and Faye Walker, two of the hospital's employees, approached Seese to inform him that they had witnessed two individuals take something from the delivery van driven by Seese. Upon returning to the van, Seese ascertained that between $500 to $600 in coins and one dollar bills was missing from the van.
¶ 4. Following a call to the police by the witnesses, an investigation of this incident took place. The investigation led to the questioning of Whinery and Walker. They provided a detailed description of the thieves to the police, including the fact that they were two black men. As well, Whinery and Walker gave a detailed description of the car in which the perpetrators drove away, including the make and color of the car, and the Alabama license plate number. A report was then radioed out to all nearby law enforcement agents. Soon after, the police pulled over a vehicle matching the description given by Whinery and Walker. The car was occupied by Stradford *Page 392 
and Bonnie Richards Burks. Burks and Stradford were immediately apprehended and a search of the vehicle ensued. No money was found in the car at the time of the search; however, it was later recovered by a highway maintenance worker along a roadside, apparently having been dumped there after the crime.
¶ 5. About two hours after Burks and Stradford were arrested, Whinery and Walker were shown photographs of six black men. At that time, they identified Burks and Stradford as the men they saw robbing the delivery van at the hospital. Before the trial began, Burks filed a motion to suppress the identification testimony of Whinery and Walker. At trial, both Burks and Stradford objected to this identification testimony. A hearing was conducted outside the presence of the jury regarding the motion and objections. The trial judge denied the motion and overruled the objections, allowing the testimony to be heard by the jury. Stradford cites error on the part of the trial court for failing to suppress such testimony.
¶ 6. Stradford also alleges that a crucial flaw existed in the substance of the indictment, charging that it failed to correctly identify the victim of the robbery. The indictment was written to state the name of the victim as "Tim Seese." However, for purposes of this appeal, Stradford now contends that the indictment was faulty because it should have articulated that the owner of the van, Grady Sims, was the victim rather than Seese.
 STANDARD OF REVIEW
¶ 7. On the issue of whether to suppress identification based on a photographic display, our scope of review is provided by the Mississippi Supreme Court in York v. State, 413 So.2d 1372, 1378 (Miss. 1982):
 [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
This language echoes the holding of the United States Supreme Court inSimmons v. U.S., 390 U.S. 377, 383-84 (1968). In that case, the Court held that there shall be no conviction overturned based on a due process violation in a pretrial identification of the defendant(s) unless the procedure used in the photographic display made it such that the photographs were "so impermissibly suggestive" that there would be a "substantial likelihood of irreparable mistaken identification." Id.
¶ 8. Regarding in-court identification by a witness following a pretrial photographic identification, our opinion in Buggs v. State,754 So.2d 569 (¶ 20)(Miss. Ct. App. 2000), provides that a reviewing court may not disturb the ruling of the trial judge unless there is an absence of "substantial credible evidence supporting it." (citing Ray v.State, 503 So.2d 222, 224 (Miss. 1986)).
¶ 9. As to the second issue in review, the amendment of the indictment to reflect the true name of the victim, it is this Court's task to review whether the proposed amendment would be one of form and not of substance. Evans v. State, 499 So.2d 781, 785 (Miss. 1986). Miss. Code Ann. § 99-17-13 (Rev. 1994) provides that where there is any variance between the indictment for any offense and the name or surname, or both or in the description of a person the following applies:
 [I]t shall and may be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense on the merits, to order such indictment and the record and proceedings in the court to be amended according to the proof, whenever it may *Page 393 
be deemed necessary by the court to amend such indictment. . . .
Id.
 LEGAL ANALYSIS
¶ 10. Stradford urges this Court to overturn the conclusions of the trial court because he claims that the trial court erred in allowing the testimony of Whinery and Walker regarding their photo identification and, subsequently, their in-court identification of Stradford. However, it is our opinion that there is no merit to this argument. In Wilson v.State, 759 So.2d 1258 (¶ 10)(Miss. Ct. App. 2000), (quoting Wilsonv. State, 574 So.2d 1324, 1327 (Miss. 1990)), we concluded that:
 Our supreme court has established that a photographic array containing pictures of the [defendant] viewed by the victim [or witnesses] is not unduly prejudicial unless the [defendant's] photograph is notably different from the remaining photographs or the officer conducting the photo line-up makes some comment suggesting the identification of the [defendant]. Further, even if the pretrial photo line-up is determined to be unduly suggestive, a later in-court identification is still perfectly admissible unless, from the totality of the circumstances, the pretrial identification was so suggestive as to create a "very substantial likelihood of irreparable misidentification."
In the case at bar, there is no evidence presented in the record that would indicate a notable difference in the photograph of Stradford and the photographs of the other men that were shown to Whinery and Walker. Stradford claims that the photographs of him and Burks were the only photographs where there was not present an identification tag worn by criminals who had been arrested. Without condoning or encouraging the procedure of placing Stradford and Burks in the lineup without identification tags, we are convinced that the trial judge was correct in discounting this argument. Whinery and Walker testified that they clearly were not influenced by the absence of these tags. In York, the Mississippi Supreme Court opined that, to be impermissibly suggestive, the photograph of the defendant must be "conspicuously singled out in some manner from others. . . ." York, 413 So.2d at 1383. It is our opinion that the missing name tag on the defendant would not serve to single out Stradford in a prejudicial fashion. Rather, the argument could easily be made that the absence of the name tags in the photographs of Stradford and Burks could most likely work in their favor, as the witnesses could arguably be more apt to choose a photograph where it was apparent that the person in the photograph had been arrested and booked for a crime. We do find it of great importance to note that in other cases, depending on the surrounding facts and evidence, this process could prove to be precarious. Therefore, we acknowledge that this is not the most preferable approach to a lineup and we do not purport to advocate the idea that any lineup should reflect significant differences in any of the photographs. Still, because of the overwhelming identification evidence in this case, we are not convinced that Stradford was prejudiced by these missing identification tags or that the outcome would have been any different with the tags present.
¶ 11. Looking to the record of this trial, we find that this case should be affirmed as the photograph of Stradford was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." York, 413 So.2d at 1378. Further, it is our opinion that there was substantial evidence to support the trial judge's decision to allow the testimony of Whinery and Walker. Whinery and Walker both witnessed the robbery at the very same time while walking to their cars after work. Their separate testimony at trial indicates that they both described Stradford accurately, they both were able to get a good look at his face, and they knew the color and make of the car in which Stradford and Burks drove away *Page 394 
from the scene of the crime, including the license plate number and state. The car described by Whinery and Walker to the police turned out to be the very car in which Stradford and Burks were found before being arrested. Whinery and Walker also identified the car itself as the car they saw Stradford and Burks drive away in on the day of the crime. It is apparent to this Court from the record that, at the time that Whinery and Walker were shown the photographic array, they were both undeniably certain of the identity of the perpetrators of the robbery. There is no evidence presented by Stradford that would indicate a possible misidentification, much less a "substantial likelihood" of such.
¶ 12. Stradford also asserts that the court erred in allowing the testimony of Whinery and Walker because they were able to "confer" with one another while viewing the photographs together. We find that there is no authority that directs us that two witnesses who were present together at the time of the crime should be shown the photographic array at separate times to diminish the risk of unfair prejudice to the defendant. Again, as with the missing identification tags, while we agree to some extent with Stradford that this procedure may not be the most effective or the most preferred, we are not convinced that Stradford was prejudiced in any way. Once more, however, we note that this may not always be the case depending on the circumstances of the parties. We therefore take this opportunity to caution police and other authorities performing such identification procedures that this type of joint identification by two witnesses may be risky in certain cases. Nonetheless, in our case at bar, the fact that the two women witnessed the crime and the perpetrators of such crime at the exact same time and that both were, according to their accurate descriptions given on more than one occasion, absolutely certain of the identity of both men at the time they viewed the photographs two hours later suggests that the two women were not influenced by each other as to the persons they had seen commit the robbery. Neither Whinery nor Walker wavered on their certainty of the identity of the robbers at the photographic array, asserting that it was so fresh in their minds.
¶ 13. As to the issue of the in-court identification of Stradford by Whinery and Walker, it is our opinion that the trial judge was correct in allowing such testimony. In Ray v. State, 503 So.2d at 224, the Mississippi Supreme Court provided that the scope of review in such cases is that the reviewing court must look to the totality of the circumstances to determine whether the in-court testimony had been "impermissibly tainted." As such, this Court may disturb the trial court's findings "only where there is an absence of substantial credible evidence supporting it." Id. At trial, Whinery and Walker were both asked separately whether they had any doubts about the identity of the robbers. Both answered negatively without hesitation. When asked whether one was influenced by the other in the identification process, they again immediately answered "no" and each of them asserted that they got a good look at the men and the car and therefore did not need any assistance in picking the photographs of Stradford and Burks. There is no evidence in the record or in Stradford's argument which would tend to support the idea of some form of conspiracy between the two women to choose Stradford as one of the robbers. Because we find that the photographic array procedure was proper, because Stradford offers nothing to this Court to negate the testimony and in-court identification by Whinery and Walker, and because Stradford presents nothing to prove that he was prejudiced by such testimony and identification, we conclude that the trial judge ruled correctly in allowing this testimony. We find, and Stradford gives us, no authority that we may turn to that would suggest that this procedure was impermissibly suggestive. Inasmuch as there is substantial credible testimony *Page 395 
supporting the identification of Stradford, both through the photographic array and at trial, we cannot hold that the trial judge erred.
¶ 14. As to the issue of whether there should have been an amendment to the indictment to reflect the correct name of the victim of the robbery, we also find that there is no merit. Stradford attempts to confuse the issue by inviting this Court to play "you pick the victim" when he challenges us to decide whether the money was stolen from Seese or from Grady Sims, Seese's employer. The State points out that Stradford's argument to this Court has changed from his original argument that the indictment was faulty only because it did not state Seese's name correctly. In that initial assertion, no mention of Stradford's current contention that Sims was the actual victim of the robbery was ever made. In either instance, Stradford's claim fails here. Mountains of case law out of our Mississippi courts speak to this issue of amending indictments to reflect the true names of parties. See Evans v. State, 499 So.2d 781
(Miss. 1986); Bingham v. State, 434 So.2d 220 (Miss. 1983); Evans v.State, 425 So.2d 1043 (Miss. 1983); Jones v. State, 279 So.2d 594 (Miss. 1973); McDole v. State, 229 Miss. 646, 91 So.2d 738 (1957); Gillespie v.State, 221 Miss. 116, 72 So.2d 245 (1954); Burson v. State, 756 So.2d 830
(Miss. Ct. App. 2000).
¶ 15. Stradford offers the case of Voss v. State, 208 Miss. 303,44 So.2d 402 (1950) to convince this Court that we should find that the indictment was "fatally defective." We are not convinced. Stradford misses the point with this case which deals with names of parties in a co-partnership being absent from the indictment. Id. at 402. Although the indictment in Voss was found to be defective, it was also found by the court to be amendable to reflect those names that should have necessarily been placed on the indictment. This case does not help Stradford's argument, whichever of his two arguments that he is attempting to prove. The issue to be dealt with in Stradford's case is when an indictment may be appropriately amended. It matters not in the amendment of the indictment in the case at bar whether the assertion by Stradford is that Tim Seese's name was misspelled on the indictment or whether instead he is asserting that Grady Sims's name should be reflected as Seese's employer because Seese was working within the scope of his employment at the time of the robbery. In either scenario, the law on amending indictments remains constant. The State points out that an amendment to this indictment in either situation would not have changed any element that the State would have to prove, nor would it deprive the defendant of any defenses he may have sought to raise. The State sought only to prove, beyond a reasonable doubt, that Stradford and Burks committed the crime of grand larceny by taking money from the van driven by Seese and belonging to Sims. An amendment to the indictment to reflect the proper victim or the proper spelling of the victim's name would not purport to change the overwhelming evidence against Stradford nor the State's argument that Stradford and Burks were guilty of the crime and properly charged in the indictment.
¶ 16. Mississippi Code Ann. § 99-17-13 (Rev. 1994) explicitly makes it possible for a party to amend an indictment where the change is to an immaterial matter and the defendant will not be prejudiced in his defense. Jackson v. State, 450 So.2d 1081, 1082 (Miss. 1984); Bingham, 434 So.2d at 223; Evans, 425 So.2d at 1044-45. See also Van Norman v.State, 365 So.2d 644, 647 (Miss. 1978); Jones, 279 So.2d at 650-51;Shelby v. State, 246 So.2d 543, 545 (Miss. 1971); Bennett v. State,211 So.2d 520, 522 (Miss. 1968); Gillespie, 221 Miss. at 118, 72 So.2d at 246. In other words, if an amendment is made in an indictment, it must be one of form, not substance, to be acceptable. Rhymes v. State,638 So.2d 1270, 1275 (Miss. 1994); Evans, 499 So.2d at 785; Akins v.State, 493 So.2d 1321 (Miss. 1986); *Page 396 Contreras v. State, 445 So.2d 543, 545 (Miss. 1984); Hannah v. State,336 So.2d 1317, 1321 (Miss. 1976); Sanders v. State, 313 So.2d 398, 401 (Miss. 1975). The test for whether the amendment is form or substance is:
 [W]hether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.
42 C.J.S. Indictments and Informations § 240, page 1250 (1944);Bingham, 434 So.2d at 223. Examples given in Miss. Code Ann. § 99-17-13
of amendments made to indictments that are considered that of form rather than substance include:
 [T]he name or description of any person, body politic or corporate, therein stated or alleged to be the owner of any property, real or personal, which shall form the subject of any offense charged therein, or in the name or description of any person, body politic or corporate, therein stated or alleged to be injured or damaged; or intended to be injured or damaged, by the commission of such offense or in the Christian name or surname, or both, or other description whatever, of any person whomsoever, therein named or described, or in the ownership of any property named or described therein, or in the description of any property or thing. . . .
Miss. Code Ann. § 99-17-13.
¶ 17. Here, it is our opinion that this matter of the name of the victim in the indictment would be a matter of simple form. As we mentioned above, changing the name of the victim or, in turn, adding the name of the employer of the victim, would not change the elements of grand larceny which the State has the burden of proving to obtain a conviction. The record is clear from testimony of eyewitnesses and police officers and other substantial evidence that Stradford was indeed one of the perpetrators in this crime. Therefore, clearing up confusion as to whom was victimized is not a substantive amendment that would alter the elements of grand larceny to be proven by the State. Grand larceny is defined in Mississippi as the "taking and carrying away, feloniously, the personal property of another, of the value of two hundred fifty dollars ($250.00) or more. . . ." Miss. Code Ann. § 97-17-41 (Rev. 1994) (emphasis added). Those are the only elements that the State is challenged with proving in a grand larceny case. Id. Moreover, in accordance with the test above, we are not convinced that Stradford's defenses would be compromised by a simple name change in the indictment. He would be challenged with defending himself against the charge of grand larceny regardless of whether the victim was actually the driver of the van or the owner of the van.
¶ 18. Pursuant to the foregoing analysis, we affirm the judgment of the lower court.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY OFCONVICTION OF GRAND LARCENY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OFTHE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED. ALL COSTSOF THIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., IRVING, LEE, MOORE, MYERS,PAYNE, AND THOMAS, JJ., CONCUR. *Page 397