ROBERTS, J.,
for the Court:
¶ 1. This appeal stems from the September 9, 2010 conviction of Ramon Korbel Quinn on three counts of selling crack cocaine to a Mississippi Bureau of Narcotics (MBN) confidential informant on three separate occasions. On the following day in the Leake County Circuit Court, Quinn was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC) on Count I; twenty years in the custody of the MDOC on Count II; and ten years in the custody of the MDOC on Count III, with five years suspended and five years of post-release supervision (PRS). All sentences were ordered to run consecutively to the other resulting in a total of forty-five years in the custody of the MDOC. Feeling aggrieved, Quinn filed a pro se motion for new trial, or in the alternative, a motion for a judgment notwithstanding the verdict (JNOV). Quinn’s counsel also filed a motion for a new trial on Quinn’s behalf. The circuit judge denied the motions, and Quinn perfected his appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2. A Leake County grand jury indicted Quinn on June 28, 2010, on three counts of violating Mississippi Code Annotated section 41 — 29—139(a)(1) (Supp.2011). Each of the three counts stated that Quinn “did willfully, unlawfully, feloniously and knowingly sell and deliver to Mississippi Bureau of Narcotics Confidential Informant # 95-110, a Schedule II controlled substance .... ” Quinn’s trial began on September 9, 2010, and the State produced seven witnesses. Larry Gardner testified that while acting as a confidential informant for the MBN, he purchased crack *94 cocaine from Quinn in three separate transactions on the following dates: August 28, 2009; September 25, 2009; and October 1, 2009. Gardner, a past drug user, had been clean for approximately two years and had often worked as a confidential informant for the MBN since he was familiar with the drug sellers in the community. He was paid one-hundred dollars for each successful buy. Prior to each transaction, Gardner met with MBN agents and investigators for a search of his person and vehicle to ensure no outside drugs, weapons, or money were available to Gardner. He was also provided with the audio and video recording devices to relay his transactions with Quinn to the law-enforcement officials. Gardner purchased between twenty dollars and forty dollars worth of crack cocaine from Quinn. After purchasing the crack cocaine from Quinn, Gardner again met with law-enforcement officials to turn over the purchased crack cocaine, as well as submit to a second search of his person and vehicle to ensure no money or crack cocaine was kept. In addition, the law-enforcement officials retrieved the video and audio recordings for their review.
¶ 3. In addition to Gardner’s testimony, Leake County Sheriffs Office Narcotics Investigator Clay McCombs, MBN Agent Matthew Simmons, Carthage Police Department Narcotics Officer Chance Henderson, and Leake County Sheriffs Office Canine Officer Justin Sims testified regarding their involvement in the case. Also, Jamie Johnson and Keith McMahan, both forensic scientists in drug identification and analysis with the Mississippi Crime Lab testified and confirmed that the substance recovered from each transaction was, in fact, crack cocaine. Investigator McCombs explained the process of using a confidential informant to aid in apprehending drug sellers, and he stated that he met with Gardner after Gardner relayed his interest in working as a confidential informant.
¶ 4. Investigator McCombs testified that on August 28, 2009, Gardner informed Investigator McCombs that Gardner could purchase crack cocaine from Quinn. Gardner testified that he had known Quinn for approximately ten years and “was a friend” of Teresa Boone, Quinn’s mother. Following procedure, Investigator McCombs and Officer Henderson conducted a search of Gardner and his vehicle, and Gardner was provided money to purchase crack cocaine from Quinn. Gardner was outfitted with audio and video equipment to record the transaction. After Quinn sold Gardner crack cocaine that same day, Gardner met with Investigator McCombs and Officer Henderson to deliver the crack cocaine he bought and return the video and audio equipment. Gardner and his vehicle were again searched according to proper procedure.
¶ 5. On all three dates, both the pre-buy and post-buy searches of Gardner resulted in no other illegal substances or paraphernalia. The same pre-buy and post-buy process described above was repeated in both the September 25, 2009 and October 1, 2009 transactions involving Gardner and Quinn. Again, on all three dates, Gardner met Quinn and exchanged State-issued money for crack cocaine provided by Quinn. Both the August 28, 2009 and October 1, 2009 transactions produced a forty-dollar rock of crack cocaine; the September 25, 2009 transaction produced a twenty-dollar rock of crack cocaine. Agent Simmons and Officer Henderson handled the pre-buy and post-buy searches of Gardner and his vehicle for the September 25, 2009 transaction, and Investigator McCombs, Agent Simmons, and Officer Sims handled the pre-buy and post-buy searches for the October 1, 2009 transaction.
*95 ■ ¶ 6. At the close of the State’s testimony, Quinn moved for a directed verdict alleging that the State had failed to prove “that he, indeed, sold crack cocaine to a confidential informant on three occasions.” The circuit judge overruled Quinn’s motion. Quinn rested his case without testifying and without presenting any witnesses or evidence. The jury received instructions and was sent to deliberate. Approximately twenty minutes later, the jury returned its verdict finding Quinn guilty as to all three counts. Quinn’s sentencing hearing held on September 19, 2010, resulted in a sentence of twenty years in the custody of the MDOC on Count I; twenty years in the custody of the MDOC on Count II; and ten years in the custody of the MDOC on Count III, with five years suspended and five years of PRS. The sentences were ordered to run consecutively for a total of forty-five years in the custody of the MDOC followed by five years of PRS. On September 20, 2010, Quinn filed a pro se motion for a new trial, or, in the alternative, a motion for a JNOV. On a later date, Quinn’s attorney also filed a motion for a new trial. Ultimately, the circuit judge denied these motions. Quinn now appeals and raises the following issues:
I. Whether the circuit court erred in denying the motion for a directed verdict, the request for a peremptory instruction, and [the motions] for a new trial?
II. Whether the circuit court erred in sustaining the State’s objection to Quinn’s cross-examination of Gardner?
ANALYSIS
I. Indictment
¶ 7. Although Quinn initially phrases this issue as a challenge to the weight and sufficiency of the evidence, a review of his argument indicates that his challenge is actually whether the evidence presented at trial conformed to charges in his indictment. Quinn was charged with three counts of violating Mississippi Code Annotated section 41 — 29—139(a)(1), which makes it “... unlawful for any person knowingly or intentionally: [t]o sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance[.]” In each count of his indictment, Quinn was charged with “willfully, unlawfully, feloniously and knowingly selling] and delivering] to [MBN] Confidential Informant # 95-110, a Schedule II controlled substance, namely cocaine, in Leake County, Mississippi, contrary to and in violation of [Mississippi Code Annotated] Section 41 — 29—139(a)(1).... ” Quinn argues that his indictment charged him with selling cocaine to “[MBN] Confidential Informant # 95-110,” but the proof produced at trial only showed Quinn made three sales of cocaine to Gardner. Ultimately, his claim is that the State did not prove all the essential elements of the crime and every allegation of the indictment because the State failed to prove that Gardner was MBN Confidential Informant # 95-110. There is no proof in the record that MBN Confidential Informant # 95-110 was anyone other than Gardner.
¶ 8. As the State correctly points out in its brief, the record is void of any objection made by Quinn to the substance or form of his indictment at trial or in his post-trial motions. If there is a substantive defect in an indictment, the issue cannot be waived; however, the issue of a defect in the form, and not substance, of an indictment curable by an amendment at trial may be waived if it is not timely raised. Buford v. State, 756 So.2d 815, 816 (¶ 4) (Miss.Ct.App.2000) (citations omitted). When deciding if a defect is of sub *96 stance or of form, the following test is applied:
Whether or not a defense under the indictment or information as it originally-stood would be equally available after the amendment is made and whether or not any evidence [the] accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.
McCullen v. State, 786 So.2d 1069, 1078 (¶ 23) (Miss.Ct.App.2001) (quoting Stradford v. State, 771 So.2d 390, 396 (¶ 16) (Miss.Ct.App.2000)). Uniform Rule of Circuit and County Court 7.09 provides that “[a]ll indictments may be amended as to form but not as to the substance of the offense charged.... Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.” In this case, we find that this defect is one of form and not substance, and Quinn is procedurally barred from raising this issue on appeal since he failed to present the issue to the circuit court for review first. Quinn’s concern is that his indictment did not reflect that he sold cocaine to Gardner, which was the evidence produced at trial, and that the State failed to prove Gardner and MBN Confidential Informant # 95-110 were one and the same. The specific, correct name of the individual to whom the drugs were sold is not an essential element of the crime Quinn was charged with committing and did not affect any possible defense he may have had to the charges of selling cocaine. Under Rule 7.09, it is likely that if Quinn had objected to the indictment at trial, the State would have been permitted to amend the indictment to reflect Gardner to be the MBN Confidential Informant # 95-110.
¶ 9. Because the circuit court did not have the opportunity to address this issue and because the indictment’s defect is one of form and not substance, we find this issue is procedurally barred.
II. Cross-Examination
¶ 10. In Quinn’s next issue, he argues the circuit court erred in sustaining the State’s objection to his cross-examination of Gardner about the relationship between Gardner and Teresa Boone, Quinn’s mother. The standard of review applied to a circuit judge’s admission or exclusion of evidence and testimony is abuse of discretion. Wade v. State, 583 So.2d 965, 967 (Miss.1991). Quinn submits that Gardner only approached law-enforcement officials to act as a confidential informant after his relationship with Boone had ended. Because this evidence was excluded, Quinn argues that he was not able to pursue a defense of selective prosecution.
¶ 11. According to Mississippi Rule of Evidence 611(b), the scope of cross-examination “shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.” The official comments to Rule 611(b) states that “[u]nder this wide-open cross-examination[,] any matter may be probed that is relevant.” At trial, the following exchange took place:
DEFENSE ATTORNEY: You know other people that you would claim that sell drugs in Carthage. Is that right?
GARDNER: Yes, sir.
STATE: Objection, Your Honor.
THE COURT: Sustained.
DEFENSE ATTORNEY: Your Honor, I believe that’s all the questions I have.
There was no ground given as a basis for the objection, nor was there a explanation given for sustaining the objection. Fur *97 ther, the record is void of what testimony Quinn sought to discover from this potential line of questioning. Although Quinn argues that this case may be one of selective prosecution, the evidence presented shows that Quinn was just one of several individuals that Gardner bought drugs from as a confidential informant. Gardner testified that he had been working as a confidential informant for law enforcement for approximately ten to fifteen years and had participated in that capacity approximately twenty-five times prior to the current case. The fact that Gardner knew other people in the community that sold drugs was not relevant to the current case because Gardner had acted as a confidential informant on numerous occasions involving several other individuals as sellers.
¶ 12. In regard to the admission or exclusion of evidence, Mississippi Rule of Evidence 103(a) states that “[ejrror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]” Based on our review of the record, we do not find that a substantial right of Quinn was affected by the exclusion of Gardner’s testimony. Therefore, we find that the circuit judge did not abuse his discretion in excluding the testimony.
¶ 13. Finding no error, this issue is without merit.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF THREE COUNTS OF THE SALE OF COCAINE AND SENTENCES OF TWENTY YEARS IN COUNT I, TWENTY YEARS IN COUNT II, AND TEN YEARS IN COUNT III, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCES IN ALL COUNTS TO RUN CONSECUTIVELY TO ONE ANOTHER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.